STOREY & MILLER
COURT REPORTERS
601 W. RIVERSIDE
SUITE 1030
SPOKANE, WA 99201

1  Steve W. Berman, WSBA #12536
   Karl P. Barth, WSBA #22780
2  Hagens Berman LLP
   1301 Fifth Avenue, Suite 2900
3  Seattle, WA 98101
   (206) 623-7292
4
   William S. Lerach
5  Darren J. Robbins
   Milberg Weiss Bershad Hynes
6    & Lerach, LLP
   600 West Broadway, Suite 1800
7  San Diego, CA 92101
   (619) 231-1058
8
   Paul J. Geller
9  Cauley & Geller, LLP
   1 Boca Place, Suite 421A
10 2255 Glades Rd.
   Boca Raton, FL 33431
11 (561) 750-3000

12 Richard D. Kranich
   Law Offices of Richard D. Kranich
13 120 Broadway, Suite 1016
   New York, NY 10271-0074
14 (212) 608-8965

15 Attorneys for Plaintiff

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JUL 27 2000

JAMES R. LARSEN, CLERK
_____ DEPUTY
SPOKANE, WASHINGTON

16
17                 UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF WASHINGTON
18                        AT SPOKANE

19 JOHN BAIN, on behalf of himself and all     CS-00-0262-RHW
20 others similarly situated,
21                              Plaintiff,      No.
22          v.                                  CLASS ACTION COMPLAINT FOR
                                                VIOLATIONS OF THE FEDERAL
23 AVISTA CORPORATION, THOMAS                   SECURITIES LAWS
   M. MATTHEWS and JON E.
24 ELIASSEN,                                    Jury Trial Demanded
25                              Defendants.
26

CLASS ACTION COMPLAINT FOR            - 1 -
VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

1396.11 0001 BSC.DOC

ORIGINAL

HAGENS BERMAN LLP
Attorneys at Law

OFFICES IN SEATTLE  PHOENIX  LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

Plaintiff, by his undersigned attorneys, for his class action complaint, alleges the claims set forth herein. Plaintiff's claims as to himself and his own actions are based upon personal knowledge. All other allegations are based upon the investigations of counsel, which investigations included reviews of the public filings with the Securities and Exchange Commission (the "SEC") made by Avista Corporation ("Avista" or the "Company"), securities analysts' reports and advisories about the Company, press releases issued by the Company, media reports about the Company, and discussions with consultants and other witnesses. Based upon such investigations, plaintiff believes that substantial evidentiary support exists for those allegations. Plaintiff also believes that after reasonable opportunity for discovery and investigation, substantial additional evidentiary support will likely exist for those allegations. Each paragraph sets forth with particularity the basis for the allegations contained therein.

## I.    NATURE OF THE ACTION

1.    This is a proposed securities class action brought on behalf of all persons, other than defendants and affiliated persons as described below (the "Class"), who purchased or otherwise acquired the securities of Avista, between April 7, 2000 and June 21, 2000 (the "Class Period"). During the Class Period, although Avista maintained that it would only enter derivative transactions such as Forward Contracts for the sale of electricity at fixed prices in the future as a means to "limit the exposure to market risk," the Company covertly entered into massive amounts of derivative contracts to gamble that the price of electricity would decrease. Unfortunately for the Company's shareholders, however, the price of electricity skyrocketed, causing Avista's share price to drop sharply when the resulting losses were finally disclosed to the public.

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

- 2 -

1396.11 0001 BSC.DOC

HAGENS BERMAN LLP
Attorneys at Law

OFFICES IN SEATTLE  PHOENIX  LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

2.    Prior to the beginning of the Class Period, Avista disclosed in its 1999 Form 10-K that it would minimize the market risks inherent in buying and selling electricity by entering into certain derivative transactions to "manage the risks associated with market fluctuations in the price of electricity and natural gas." The Company further maintained that its market risk exposure would be "actively managed with strict policies designed to limit the exposure to market risk."

3.    The Class Period commences on April 7, 2000 with Avista's entry into large quantities of derivative contracts not for the purpose of hedging or limiting exposure to market risk, but for exactly the opposite purpose –to speculate on the price of energy as a means of improving their net income. These contracts –known as "Forward Contracts" – provided for Avista to sell large quantities of electricity to customers far into the future at prices that were fixed as of the contract date.

4.    Avista hoped that energy prices would decrease during the interim period between the time when Avista entered into the contracts and when they actually had to deliver the products. Then, they would be able to buy the electricity in the open market at the lower prices, and sell it at the fixed higher prices under the contract. This would result in windfall profits for the Company.

5.    Unfortunately for Avista's shareholders, exactly the opposite happened. As described by the Company's utilities president, prices rose "to an unprecedented level, the likes of which have never been seen in the Pacific Northwest ...." Avista's 1999 second quarter business plan had forecast on-peak power prices of $19 per megawatt. But Avista, still liable to supply the electricity at the far lower contractual rate, was forced to buy the power at prices averaging $60 per megawatt in May and over $100 per megawatt in June to supply these contracts. The company suffered

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

- 3 -

1396.11 0001 BSC DOC

HAGENS BERMAN LLP
Attorneys at Law

OFFICES IN SEATTLE  PHOENIX  LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1   massive losses on these contracts —losses that erased all of the Company's anticipated
2   profits for the second quarter and the entire year of 2000.

3        6.    Following the disclosure of the elimination of all of Avista's annual
4   profits, Avista's stock price, which closed at $37-11/16 per share on the day prior to
5   the class period, closed at $19.00 per share on June 21, 2000 —resulting in a loss of
6   more than $800 million in market capitalization to the shareholders of Avista.

7   ## II.    JURISDICTION AND VENUE

8        7.    This Court has jurisdiction in this action pursuant to Section 27 of the
9   Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78aa, and
10  28 U.S.C. §§ 1331, 1337 and 1367.

11       8.    Plaintiff brings this action pursuant to Sections 10(b) and 20(a) of the
12  Securities Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5, 17 C.F.R.
13  § 240.10b-5, promulgated thereunder by the SEC.

14       9.    Venue is proper in this District pursuant to Section 27 of the Exchange
15  Act, and 28 U.S.C. §§ 1391(b) and (c). Many of the acts and transactions giving rise
16  to the violations of law complained of herein occurred in this District. In addition,
17  Avista maintains its corporate headquarters and executive offices within the Eastern
18  District of Washington.

19       10.    In connection with the acts and conduct alleged in this Complaint,
20  defendants, directly and indirectly, used the means and instrumentalities of interstate
21  commerce, including the mails and telephone communication systems, and the
22  facilities of a national securities market.

23

24

25

26

HAGENS BERMAN LLP
Attorneys at Law

OFFICES IN SEATTLE PHOENIX LOS ANGELES
1301 Fifth Avenue, SUITE 2900 • Seattle, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

### III.    THE PARTIES

11.    Plaintiff John Bain purchased 50 shares of Avista stock on April 17, 2000 at $31.90 per share and has been damaged as a result of defendants' conduct as described herein.

12.    Defendant Avista is a Washington corporation with its principal offices within this judicial district at 1411 East Mission Avenue, Spokane, Washington 99202. Avista's common stock trades on the New York Stock Exchange under the symbol "AVA" The Company files annual, quarterly and other reports with the SEC in accordance with the Exchange Act.

13.    At all times relevant hereto, defendant Thomas M. Matthews ("Matthews") was President, Chief Executive Officer and Chairman of the Board of Directors of the Company. Because of his position with the Company, defendant Matthews had access to the material, adverse, non-public information about Avista's internal control structure, as well as the Company's finances, and had access to internal corporate documents (including the Company's operating plans, budgets and forecasts, and reports of actual operations compared thereto), conversations and communications with other corporate officers and employees, attendance at management and Board of Directors' meetings and committees thereof, and via reports and other information provided to him in connection therewith, and directly communicated with securities analysts regarding Avista's business and financial condition.

14.    At all times relevant hereto, defendant Jon E. Eliassen ("Eliassen") was Chief Financial Officer of the Company. Because of his position with the Company, defendant Eliassen had access to the material, adverse, non-public information about Avista's internal control structure, as well as the Company's finances, and had access

HAGENS BERMAN LLP
Attorneys at Law

OFFICES IN SEATTLE  PHOENIX  LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1   to internal corporate documents (including the Company's operating plans, budgets
2   and forecasts, and reports of actual operations compared thereto), conversations and
3   communications with other corporate officers and employees, attendance at
4   management and Board of Directors' meetings and committees thereof, and via
5   reports and other information provided to him in connection therewith, and directly
6   communicated with securities analysts regarding Avista's business and financial
7   conditions.

8       15.     The officer defendants identified above (collectively the "Individual
9   Defendants"), because of their positions of control and authority as officers of the
10  Company, were able to and did control the contents of the various quarterly and
11  annual financial reports, SEC filings, press releases, and presentations and
12  communications with securities analysts pertaining to the Company.  Each Individual
13  Defendant was provided with copies of Avista's press releases and SEC filings alleged
14  herein to be misleading prior to or shortly after their issuance and had the ability and
15  opportunity to prevent their issuance or to cause them to be corrected.

16      16.     The Individual Defendants engaged in the scheme in order to conceal
17  Avista's speculation in risky derivative contracts in order to (i) protect and enhance
18  their executive positions and the substantial compensation paid to them by the
19  Company; and (ii) enhance the value of their personal Avista securities holdings and
20  options.

21      17.     Each of the Individual Defendants either knew or recklessly disregarded
22  the fact that the illegal acts and practices, and misleading statements and omissions
23  described herein would adversely affect the integrity of the market for Avista common
24  stock and would artificially inflate or maintain the prices of those securities.

25

26

CLASS ACTION COMPLAINT FOR            - 6 -
VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

1396.11 0001 BSC DOC

HAGENS BERMAN LLP
Attorneys at Law
OFFICES IN SEATTLE  PHOENIX  LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

18.     Each of the Individual Defendants, by acting as herein described, did so knowingly or in such a reckless manner as to constitute a fraud and deceit upon plaintiff and the members of the class that plaintiff seeks to represent.

## IV.    CLASS ACTION ALLEGATIONS

19.     Plaintiff brings this case as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class consisting of all persons and entities who purchased Avista securities or sold put options for Avista common stock during the Class Period (the "Class"), that is, during the period April 7, 2000 (the date of Avista's entry into speculative forward-sale contracts) through June 21, 2000 (the date on which Avista first publicly revealed the extent of the financial impact of the losses related to the speculative contracts). Excluded from the Class are the defendants herein; any subsidiaries or affiliates of Avista; the officers and directors of Avista during the Class Period; members of the Individual Defendants' immediate families; any person, firm, trust, corporation, officer, director or any individual or entity in which any defendant has a controlling interest or which is related to, or affiliated with, any of the defendants; and the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded party.

20.     During the Class Period, millions of shares of common stock of Avista were traded on the New York Stock Exchange (the "NYSE"), an efficient and developed securities market. Thousands of brokers nationwide have immediate access to trading information about Avista through the NYSE. Within minutes of any transaction taking place, this system displays the most recent trades and prices.

21.     The members of the Class are so numerous that joinder of all members is impracticable. Avista has more than 47 million shares of common stock outstanding. During the Class Period, millions of shares of Avista stock were purchased by

HAGENS BERMAN LLP
Attorneys at Law

OFFICES IN SEATTLE  PHOENIX  LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1   hundreds or thousands of persons located throughout the United States. The exact

2   number of Class members may be determined through appropriate discovery.

3         22.    Plaintiff's claims are typical of the claims of the members of the Class.

4   Plaintiff and all members of the Class sustained damages as a result of defendants'

5   wrongful conduct complained of herein.

6         23.    Plaintiff will fairly and adequately protect the interests of the members of

7   the Class and has retained counsel competent and experienced in class-action and

8   securities litigation. Plaintiff has no interests that are adverse or antagonistic to, or in

9   conflict with, the interests of the other members of the Class.

10        24.    A class action is superior to other available methods for the fair and

11  efficient adjudication of this controversy because, among other things, it would be

12  impracticable and undesirable for all members of the Class to bring separate actions in

13  various parts of the country. In addition, because the damages suffered by many

14  individual Class members may be relatively small, the expense and burden of

15  individual litigation make it virtually impossible for Class members to seek redress

16  individually for the wrongful conduct alleged herein.

17        25.    The prosecution of separate actions by individual Class members also

18  would create the risk of inconsistent and varying adjudications concerning the subject

19  of this action, which adjudications could establish incompatible standards of conduct

20  for defendants under the laws cited herein. Further, common questions of law and fact

21  exist as to all members of the Class and predominate over any questions affecting

22  solely individual members of the Class in that, at least by use of publicly filed reports,

23  defendants have acted on grounds generally applicable to the entire Class. Among the

24  questions of law and fact common to the Class are:

25

26

CLASS ACTION COMPLAINT FOR                    - 8 -
VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

1396.11 0001 BSC.DOC



HAGENS BERMAN LLP
*Attorneys at Law*

OFFICES IN SEATTLE PHOENIX LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

(a)    whether the federal securities laws were violated by defendants' acts as alleged herein;

(b)    whether statements disseminated to the investing public and securities markets by the defendants omitted or misrepresented material facts concerning the Company's true financial results;

(c)    whether defendants, to the extent required by the federal securities laws, acted with the requisite state of mind in omitting and/or misrepresenting material facts concerning the failure to disclose the known financial impact that the risky derivative contracts would have on the Company's financial results;

(d)    whether the market price of Avista's securities during the Class Period was artificially inflated or maintained due to the misrepresentations and/or non-disclosures concerning the speculative derivative contracts on the Company's financial results; and

(f)    whether the members of the Class have sustained damages and, if so, the appropriate measure thereof.

26.    Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. The names and addresses of the record owners of Avista securities purchased during the Class Period are available from the Company or its transfer agent(s).  Notice may be provided to such record owners via first class mail using techniques and a form of notice similar to those customarily used in class actions.

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

- 9 -

1396.11 0001 BSC.DOC

HAGENS BERMAN LLP
Attorneys at Law

OFFICES IN SEATTLE  PHOENIX  LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

# V.    FACTUAL ALLEGATIONS

## A.    Background Information Regarding Avista

27.    Avista Corp. is an electric and natural gas utility, providing retail electric and natural gas distribution and transmission services, and electric and natural gas commodity trading and wholesale marketing.

28.    Avista is involved in many energy-related business areas.  One of their primary businesses is selling large quantities of electricity to various parties under long-term contracts.  In order to hedge against the possibility of losses the Company might be subjected to if energy prices rose during the term of its fixed-price contracts, the Company sometimes entered into derivative transactions to help reduce or eliminate these "market" risks.

29.    Derivatives are financial instruments which "derive" their value from underlying assets such as mortgages or mortgage-backed securities, but whose performance does not change proportionately with the underlying asset.  In fact, changes in the underlying asset's value often are magnified in the derivative's price.  Accordingly, derivatives are often employed to alter the level of risk related to potential changes in prices for commodities.  These uses can range from risk reduction techniques to outright speculation, as explained by the American Institute of Certified Public Accountants[1]:

> Uses of derivatives to alter risks range from uses that help mitigate or control volatile risk exposures (activities that include the idea of taking defensive action against risk through hedging) to uses that increase exposures to risk and,

---

[1]    *Derivatives – Current Accounting and Auditing Literature*, A Report Prepared by the Financial Instruments Task Force of the Accounting Standards Executive Committee (American Institute of Certified Public Accountants 1994).

HAGENS BERMAN LLP
*Attorneys at Law*

OFFICES IN SEATTLE  PHOENIX  LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

> by that, the potential rewards (the idea of offensive action, often considered as trading or speculation).
>
> *   *   *
>
> *Speculation* involves the objective of profiting by entering into an exposed position, that is, assuming risk in exchange for the opportunity to profit from anticipated market movements.
>
> *   *   *
>
> A *Hedge* is a defensive strategy.  It is used to avoid or reduce risk by creating a relationship by which losses on certain positions ... are expected to be counterbalanced in whole or in part by gains on separate positions in another market.

30.    One type of derivative that can be used for either speculative or hedging purposes is a *Forward Contract*.  Forward contracts are contracts negotiated between two parties to purchase and sell a specific quantity of a financial instrument, foreign currency, or commodity at a price specified at origination of the contract, with delivery and settlement at a specified future date.[2]

**B.    Avista's Public Disclosures Provided That it Would Enter Into Forward Contracts Only as a Means to Hedge Against Risk – Not For Speculation**

31.    Avista's Form 10-K for the year ended December 31, 1999, as filed with the SEC on or about March 17, 2000, described the Company's use of these types of forward contracts, but specifically maintained that these strategies would be used not for speculation, but to "manage the risks associated with market fluctuations in the price of electricity":

---

[2]    *Id.* at 8.

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

1396.11 0001 BSC.DOC

- 11 -



HAGENS BERMAN LLP
*Attorneys at Law*

OFFICES IN SEATTLE  PHOENIX  LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

COMMODITY PRICE RISK

Avista Utilities and Avista Energy are exposed to market fluctuations in the price and transportation costs of electric and natural gas commodities and, therefore, utilize derivative commodity instruments to hedge the impact of these fluctuations on their energy-related assets, liabilities, and other contractual arrangements.  In addition, Avista Energy trades these instruments to take advantage of market opportunities.  At times this may create a net open position in its portfolio that could result in material losses if prices do not move in the manner or direction anticipated.  <u>The Company and Avista Energy's risk management program and policies are designed to manage the risks associated with market management program and policies are designed to manage the risks associated with market fluctuations in the price of electricity and natural gas commodities</u> (see Note 4 of Notes to Financial Statements for additional information).  (Emphasis added.)

The notes to the financial statements (note 4) in this Form 10-K further described these forward contracts as a <u>risk management tool</u>:

ENERGY TRADING AND MARKETING

Avista Energy purchases natural gas and electricity directly from producers and other trading companies, and its customers include commercial and industrial end-users, electric utilities, natural gas distribution companies, and other trading companies.  Avista Energy's marketing and energy risk management services are provided through the use of a variety of derivative commodity contracts to purchase or  supply natural gas and electric energy at specified delivery points and at specified future dates.  Avista Energy also trades natural gas and  electricity derivative commodity instruments on national exchanges and through other unregulated exchanges and brokers from whom these commodity derivatives are available, and therefore experiences net open positions in terms of price, volume and specific delivery point.

The open positions expose Avista Energy to the risk that fluctuating market prices may adversely impact its financial

HAGENS BERMAN LLP
Attorneys at Law

OFFICES IN SEATTLE PHOENIX LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1
2
3

position or results of operations.  However, <u>the net open position is actively managed with strict policies designed to limit the exposure to market risk and which require daily reporting to management of potential financial exposure.</u> (Emphasis added.)

4
5
6

These representations were false and misleading in that they were made to provide the illusion that the Company was using Forward Contracts to help minimize its risk, when exactly the opposite was true.

7
8

### C.    Avista Enters Into Speculative Transactions

9
10

32.    Avista's business plan for the second quarter of 1999 forecast on-peak power prices at $19 per megawatt.

11
12
13
14

33.    On or about April 7, 2000, Avista entered into numerous large contracts for delivery of power to certain clients through October of 2000 at fixed prices.  These fixed prices were based on their assumptions from their business plan that power could be purchased from other sources for approximately $19 per megawatt.

15
16
17
18

34.    These contracts for the sale of power at a fixed price meet the definition of a derivative instrument known as a "Forward Contract" as described above.  These Forward Contracts were not offset by forward contracts for the purchase of the electricity to be supplied.

19
20
21
22
23
24

35.    Thus, the Company was unconditionally obligated to provide vast quantities of electricity to these customers at a fixed rate that approximated $19 per megawatt, but had no future fixed-price source for obtaining this electricity that it was unconditionally obligated to provide at a future date.  The Company was subject to price risk – the risk that the value of the electricity would be substantially lower or higher at the time the contract had to be performed.

25
26

36.    Under these circumstances, if the company could obtain power at a lower price in the future – say $17 per megawatt, it would enjoy profits of $2 per megawatt

HAGENS BERMAN LLP
Attorneys at Law

OFFICES IN SEATTLE  PHOENIX  LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1    in excess of normal profitability.  On the other hand, if the Company was forced to pay
2    $21 per megawatt, it would lose $2 per megawatt on the transaction.

3        37.    Despite their earlier representations that derivatives would be used only
4    for hedging purposes, the Company had employed these derivative Forward Contracts
5    as speculative tools, and made a major bet that electricity prices would fall or stabilize.
6    If electricity prices rose even slightly, the effect on the Company's earnings would be
7    dramatic.

8    **D.    The Speculative Contracts Cause Vast Losses to the Company**

9        38.    Unfortunately for Avista's shareholders, energy prices did not drop or
10   stabilize.  Rather, electricity prices skyrocketed to over $60 per megawatt in May and
11   over $100 per megawatt in June.

12       39.    As was admitted by defendant Matthews in a June 21, 2000 conference
13   call, defendants were aware – at least by early May – that the derivative contracts
14   exposed the Company to significant risk, but decided not to hedge this risk, or to
15   inform the market of this material deviation from its previously stated risk
16   management policies.

17       40.    The Company was now forced to pay $60, $100 or even more to buy the
18   electricity that it sold to these customers for slightly more than $19.  The effect on the
19   Company was devastating.  Instead of the large profits that had been expected by the
20   Company and market analysts, the Company would now break even for both the
21   quarter ended June 30 and the year ended December 31, 2000.

22       41.    During this time, the defendants were well aware of the impact that these
23   undisclosed derivative losses were having on the Company, but chose to hide such
24   losses from its shareholders and the market.  Had the market been aware of the extent
25
26

CLASS ACTION COMPLAINT FOR                    - 14 -
VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

HAGENS BERMAN LLP
Attorneys at Law

OFFICES IN SEATTLE  PHOENIX  LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1396.11 0001 BSC.DOC

1  of the derivatives' speculation that was robbing the Company of all of its profits,

2  Avista's share price would certainly have been lower.

3      42.  Avista's Form 10-Q for the period ended March 31, 2000 was filed with

4  the SEC on May 12, 2000.  This Form 10-Q did not disclose that Avista had entered

5  into widespread speculation on the future cost of electricity.  Rather, this Form 10-Q

6  merely provided that "[t]he Company's market risks related to commodity prices have

7  not changed materially from those reported in the 1999 Form 10-K."  No mention was

8  made of the large bets made by the Company through the Forward Contracts, or the

9  fact that it was apparent that such bets were already losing.  This disclosure just

10  compounded the earlier assertions made in the 1999 Form 10-K that derivative

11  contracts would be used as hedging devices rather than speculative tools.

12  **E.  The Truth About the Speculative Contracts is Finally Disclosed to the
       Market**

13

14      43.  On June 21, 2000, Avista filed a Form 8-K with the SEC containing a

15  press release that detailed the problems that had resulted from the Company's

16  speculation on future energy prices:

17          SPOKANE, WASH.:  Avista Corp. (NYSE: AVA) today
       announced that unprecedented sustained peaks in electric
18          energy prices throughout the Pacific Northwest and
       California in May and June, compounded by a wholesale
19          short position exceeding management guidelines, are
       contributing to significant losses for the second quarter at the
20          company's regulated utility operation.

21
22          Avista Utilities is expected to spend approximately 25
       percent more for purchase power this year because of
23          sustained price peaks, causing it to lose more than $90
       million in gross margin in the second quarter due to
24          additional power costs.  If current pricing levels sustain
       through year-end, additional potential losses of at least $50
25          million in gross margin could occur.

26

HAGENS BERMAN LLP
*Attorneys at Law*

OFFICES IN SEATTLE   PHOENIX   LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1

* * *

2
3
4
5
6

In addition, an Avista Utilities energy trader entered into excessive levels of short-term, fixed-price contracts for wholesale sales for delivery of power through October 2000, without making matching purchases at the time. Avista Utilities was forced to buy additional power at prices significantly higher than the selling prices to cover those contracts.

7

44.    As reported by BLOOMBERG NEWS on June 21, 2000, this speculation on

8
future energy prices eliminated all of the Company's anticipated profits for the second

9
quarter – and the entire year:

10
11
12

Avista today said it expects to have a break-even quarter and year, including a gain from a power-plant sale. The company was expected to earn 19 cents a share in the quarter and $1.01 for the year, the average estimates of analysts polled by First Call/Thomson Financial.

13

45.    After the close of trading on June 21, 2000, Avista described their

14
problems in more detail over the PR NEWSWIRE:

15
16
17
18
19

Avista Corp. (NYSE: AVA) today announced that unprecedented sustained peaks in electric energy prices throughout the Pacific Northwest and California in May and June, compounded by a wholesale short position exceeding management guidelines, are contributing to significant losses for the second quarter at the company's regulated utility operation.

20
21
22
23
24

Avista Utilities is expected to spend approximately 25 percent more for purchased power this year because of sustained price peaks, causing it to lose more than $90 million in gross margin in the second quarter due to additional power costs. If current pricing levels sustain through year-end, additional potential losses of at least $50 million in gross margin could occur.

25

* * *

26

HAGENS BERMAN LLP
Attorneys at Law

OFFICES IN SEATTLE  PHOENIX  LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

In addition, an Avista Utilities energy trader entered into excessive levels of short-term, fixed-price contracts for wholesale sales for delivery of power through October 2000, without making matching purchases at the time. Avista Utilities was forced to buy additional power at prices significantly higher than the selling prices to cover those contracts.

The volume of short-term wholesale sales exceeded management guidelines. When senior management became aware of the short positions, it was determined, in light of projected market conditions based on historical pricing data, that the most prudent course of action was to avoid the high costs of immediate action to offset the effect of these positions. Instead, the utility began to gradually diminish its exposure.

46.    Thus, senior management has admitted that it was well aware of the speculative positions in Forward Contracts taken by the Company, but decided to continue to speculate on energy prices into the future. And defendants further decided to conceal these massive risks from the shareholders. As shown above, their gamble backfired, causing massive losses to the Company —losses that wiped out the Company's entire net income for both the second quarter and fiscal year 2000.

47.    The Company further elaborated on its large "short" position that was the result of the Forward Contracts, and confirmed that it "didn't lock in rates for May and June, because open market prices were low at the time." In a classic understatement, the Company admitted that "in hindsight, not covering this position was a mistake." Indeed it was, and this "mistake" cost Avista's shareholders, who were not aware of these massive gambles being taken by the Company on future energy prices, more than $800 million in market capitalization loss.

48.    Investors and market analysts were outraged by this late disclosure of the massive losses from the Forward Contracts and other short positions in energy taken by the Company in its high-stakes gamble with investors' money. As a Credit Suisse

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

- 17 -

1396.11 0001 BSC DOC

HAGENS BERMAN LLP
*Attorneys at Law*

OFFICES IN SEATTLE PHOENIX LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

First Boston analyst put it: "Avista's credibility with investors has sunk to a new low." As a result, shares of Avista, which had closed trading on April 6, 2000 –the day before the Class Period begins – at $37-11/16 per share, closed trading on June 21, 2000 at $19 per share – a loss of almost 50%, resulting in a market capitalization loss of more than $800 million to Avista's shareholders.

## VI.   UNDISCLOSED ADVERSE INFORMATION

49.   The true status of Avista's operations and massive losses caused by its speculation in risky derivatives were concealed by defendants, which operated to artificially inflate or maintain the market price of Avista stock during the Class Period. Each of the releases, SEC filings and other statements particularized herein was false and misleading and misrepresented and/or failed to disclose the following information:

(a)   That Avista was engaging in speculative Forward Contracts for the delivery of electricity at fixed prices far into the future, thereby incurring commodity price risk should the price of electricity rise;

(b)   that such Forward Contracts exposed the Company to potentially infinite losses;

(c)   that Avista did not have the generating capacity or other ability to make delivery on its Forward Contracts without incurring substantial market risk regarding the price of electricity;

(d)   that the defendants were recklessly or deliberately failing to monitor the Company's "traders" that were given full contracting authority to enter into the Forward Contracts; and

(e)   that the Company did not have in place a proper system for monitoring and correcting the Company's exposure to risk related to Forward Contracts.

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

- 18 -

1396.11 0001 BSC.DOC

HAGENS BERMAN LLP
Attorneys at Law

OFFICES IN SEATTLE  PHOENIX  LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

50.     As a result of the foregoing, there was no reasonable basis in fact for defendants' statements that the Company's "net open position is actively managed with strict policies designed to limit the exposure to market risk and which require daily reporting to management of potential financial exposure," as the adverse facts set forth above were inconsistent with and seriously undermined those statements such that defendants had no reasonable basis to believe them and, in fact, did not believe them or were reckless in believing them.

## VII.   STATUTORY SAFE HARBOR

51.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to the allegedly false statements pleaded in this Complaint, as the statutory safe harbor does not apply to the defendants' misrepresentations of currently existing or historical facts, including defendants' dissemination of false financial statements.

## COUNT I

### (Against All Defendants For Violations of Section 10(B) of the Exchange Act and Rule 10B-5 Promulgated Thereunder)

52.     Plaintiff incorporates by reference and realleges the preceding paragraphs as though fully set forth herein.  This Count is asserted against all defendants.

53.     During the Class Period, defendants, directly and indirectly, by use of means and instrumentalities of interstate commerce and/or the mails, engaged in a plan and course of conduct, pursuant to which each of them knowingly or recklessly engaged in acts, transactions, practices, and courses of business that operated as a fraud and deceit upon plaintiff and the other members of the Class; made various untrue statements of material fact and failed to state material facts necessary in order to make the statements made, in light of the circumstances under which they were

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

- 19 -



HAGENS BERMAN LLP
Attorneys at Law

OFFICES IN SEATTLE  PHOENIX  LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1396.11 0001 BSC.DOC

1   made, not misleading; and employed devices and artifices to defraud in connection

2   with the purchase and sale of securities, which were intended to and, throughout the

3   Class Period, did: (i) deceive the investing public, including plaintiff and the other

4   Class members regarding, among other things, the extent and speculative nature of

5   forward sales contracts for energy and the effect such contracts would have upon the

6   Company; (ii) artificially inflate and maintain the market price of Avista securities;

7   and (iii) cause plaintiff and other members of the Class to purchase Avista securities at

8   artificially inflated prices.

9       **1.    The Actionable Misstatements and Omissions**

10      54.    Pursuant to the aforesaid plan and course of conduct, defendants

11  participated, directly and indirectly, in the preparation and/or issuance of the

12  statements and documents referred to above. Each of the Individual Defendants

13  participated directly in the wrongs complained of herein. By reason of their senior

14  positions as executive officers and/or directors, as well as their close personal working

15  relationships, each of the Individual Defendants was a "controlling person" of Avista,

16  within the meaning of § 20(a) of the Exchange Act, and had the power and influence,

17  and exercised the same, to cause the Company to engage in the unlawful conduct

18  complained of herein. The Individual Defendants were able to, and did, directly or

19  indirectly, in whole or material part, control the content of Avista's public financial

20  reports, filings with the SEC, and public statements. Each Individual Defendant was

21  provided, for his approval or otherwise, with copies of Avista's reports, filings,

22  releases, and statements herein alleged to have been materially false and misleading

23  prior to or shortly after their issuance by the Company, and had the ability and

24  opportunity to prevent their issuance or to cause them to be corrected.

25

26

CLASS ACTION COMPLAINT FOR          - 20 -
VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

1396.11 0001 BSC.DOC

HAGENS BERMAN LLP
*Attorneys at Law*

OFFICES IN SEATTLE  PHOENIX  LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1   55. As an officer and/or director of a publicly-held company, the common

2 stock of which was and is registered pursuant to the federal securities laws, each

3 Individual Defendant had a duty to disseminate timely, accurate, truthful, and

4 complete information, and a duty to disseminate on behalf of the Company timely,

5 accurate, truthful, and complete financial statements so that the market price of Avista

6 common stock would be based on truthful, accurate and complete information.  As

7 hereinafter alleged, each Individual Defendant violated these specific duties and

8 obligations.

9   56. Said statements and documents were materially false and misleading in

10 that, among other things, they misrepresented the status of Avista's risk management

11 program in at least the following respects:

12   (a) Contrary to their public assertion in their 1999 Form 10-K that the

13 Company's risk management program and policies are designed to "manage the

14 risks associated with market fluctuations in the price of electricity and natural

15 gas commodities," future contracts were used to speculate on the future costs of

16 electricity;

17   (b) Contrary to their public assertion in their 1999 Form 10-K that the

18 "open position" of forward contracts and other derivatives was "actively

19 managed with strict policies designed to limit the exposure to market risk,"

20 these derivative contracts were used for vast and reckless speculation on the

21 future prices of electricity; and

22   (c) While the defendants portrayed the Company's exposure to

23 changes in the price of electricity as minimal, by at least April 7, 2000, the

24 Company had exposed itself to massive amounts of Forward Contracts for the

25 sale of electricity at fixed prices, without making corresponding purchases or at

26

CLASS ACTION COMPLAINT FOR   - 21 -
VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

1396.11 0001 BSC.DOC

HAGENS BERMAN LLP
Attorneys at Law

OFFICES IN SEATTLE PHOENIX LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1   least hedging against dramatic price increases.  The Company failed to disclose

2   this vital information to its shareholders until June 21, 2000.

3   **2.    Defendants acted with scienter**

4       57.    At all relevant times, Avista and the Individual Defendants had actual

5   knowledge that the statements and documents complained of herein were materially

6   false and misleading as set forth herein and intended to deceive plaintiff and the other

7   members of the Class.  In the alternative, those defendants acted in reckless disregard

8   for the truth in that they failed or refused to ascertain and disclose such facts as would

9   have revealed the materially false and misleading nature of the statements and

10  documents complained of herein, although such facts were readily available to

11  defendants.  Said facts and omissions of defendants were committed willfully or with

12  reckless disregard for the truth.  In addition, Avista and the Individual Defendants

13  knew or recklessly disregarded that material facts were being misrepresented or

14  omitted as alleged herein.

15      58.    Information showing that the defendants acted knowingly or with reckless

16  disregard for the truth is peculiarly within defendants' knowledge and control.  As

17  senior corporate officers of Avista, the Individual Defendants had knowledge of the

18  details of the Company's financial affairs and results.  Plaintiff, who purchased Avista

19  common stock on the open market, does not have knowledge of the details of the

20  Company's internal corporate affairs.  However, the following facts, among others,

21  indicate a strong inference that Avista and the Individual Defendants acted with

22  scienter:

23          (a)    The nature and size of the Forward Contracts made them so

24      important and critical to Avista's core operations that knowledge of the

25      improper transactions by the defendants can be inferred;

26

CLASS ACTION COMPLAINT FOR                    - 22 -
VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

1396.11 0001 BSC.DOC



HAGENS BERMAN LLP
*Attorneys at Law*

OFFICES IN SEATTLE  PHOENIX  LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1       (b)    Defendant Matthews admitted on a June 21, 2000 conference call

2 that senior management was aware of the Forward Contract transactions by at

3 least early May, but chose to neither hedge them nor disclose the serious risks

4 posed by these contracts to shareholders or the market;

5       (c)    Inflating Avista's share price would result in the Company

6 improperly skewing its capital structure in favor of a larger percentage of equity

7 – thereby enabling it being able to charge higher rates for its products by virtue

8 of the calculations made by regulatory authorities in approval of rate increases.

9     **3.**    **Defendants' fraudulent misconduct damages plaintiff and the Class**

10     59.    As a result of Avista's and the Individual Defendants' fraudulent conduct

11 as alleged herein, the prices at which Avista common stock were initially sold and

12 purchased on the secondary market were artificially inflated throughout the Class

13 Period. At the time that plaintiff and the other members of the Class purchased Avista

14 common stock, the true value of such common stock was substantially lower than the

15 prices paid by plaintiff and the other members of the Class. The market price of

16 Avista common stock declined nearly 50% from $37-11/16 immediately prior to the

17 Class Period to $19 per share on June 21, 2000. In ignorance of the materially false

18 and misleading nature of the statements and documents complained of herein, as well

19 as of the adverse, undisclosed information known to defendants, plaintiff and the other

20 members of the Class relied, to their damage, on such statements and documents,

21 and/or on the integrity of the offering and market prices of Avista common stock in

22 purchasing such common stock at artificially inflated prices during the Class Period.

23 Had plaintiff and the other members of the Class known the truth, they would not have

24 taken such action.

25

26

HAGENS BERMAN LLP
*Attorneys at Law*

OFFICES IN SEATTLE PHOENIX LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

60. At all relevant times, the misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by plaintiff and the other members of the Class. The misstatements and omissions complained of herein created in the market an unrealistically positive assessment of Avista, as well as of its financial condition and ability to continue as a going concern, causing Avista common stock to be overvalued and artificially inflated at all relevant times. Defendants' false portrayal, during the Class Period, of the Company's operations and prospects, as well as of Avista's financial condition, resulted in purchases of Avista common stock by plaintiff and by the other members of the Class at artificially inflated prices measured by the difference between the market prices and the actual value of such common stock at the time of purchase, thus causing the damages complained of herein.

61. In addition, at the time Avista common stock was issued, such common stock was actively traded on the NYSE. As a result, the market for Avista common stock was well-developed, and the price at which such common stock was initially offered, as well as the prices at which it traded thereafter, necessarily reflected the material misrepresentations and omissions complained of herein.

62. As a direct and proximate result of defendants' aforesaid wrongful conduct during the Class Period, plaintiff and the other members of the Class have suffered substantial damages in connection with their purchases of Avista common stock.

63. By virtue of the foregoing, each defendant has violated § 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

- 24 -

1396.11 0001 BSC.DOC

HAGENS BERMAN LLP
Attorneys at Law

OFFICES IN SEATTLE   PHOENIX   LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

## COUNT II

### (Against the Individual Defendants for Violations of Section 20(A) of the Exchange Act)

64.     Plaintiff incorporates by reference and realleges the preceding paragraphs as though fully set forth herein.  This Count is asserted against Individual Defendants.

65.     Throughout the Class Period, each of the Individual Defendants, by reason of their executive positions or position as Chairman of the Board, and as the owners, directly and/or indirectly of their shares of the Company's common stock, had the power and influence, and exercised the same, to cause the Company to engage in the unlawful acts, conduct, and practices complained of herein.  As a result, at the time of the wrongs alleged herein, the Individual Defendants were "controlling persons" of the Company within the meaning of § 20(a) of the Exchange Act.

66.     Pursuant to § 20(a) of the Exchange Act, by reason of the foregoing, each of the Individual Defendants is liable to the same extent as is Avista for the Company's aforesaid violations of § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.  As a direct and proximate result of said defendants' wrongful conduct during the Class Period, plaintiff and the other members of the Class have suffered substantial damages in connection with their purchases of Avista common stock.

**WHEREFORE,** plaintiff and the Class pray for judgment as follows:

A.     Declaring this action to be a proper class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

B.     Awarding plaintiff and the members of the Class compensatory damages;

HAGENS BERMAN LLP
Attorneys at Law

OFFICES IN SEATTLE  PHOENIX  LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1    C.    Awarding plaintiff and the members of the Class pre-judgment and post-

2 judgment interest, as well as their reasonable attorneys' fees, expert witness fees and

3 other costs;

4    D.    Awarding extraordinary, equitable and/or injunctive relief as permitted by

5 law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64

6 and 65 and any appropriate state law remedies, including attaching, impounding,

7 imposing a constructive trust on or otherwise restricting the proceeds of the Individual

8 Defendants' open-market sales in the hands of defendants to assure that the Class has

9 an effective remedy; and

10    E.    Awarding such other relief as this Court may deem just and proper.

## VIII. JURY DEMAND

12 Plaintiff demands a trial by jury.

14 DATED: July 26, 2000

**HAGENS BERMAN LLP**

By _____
    Steve W. Berman, WSBA #12536
    Karl P. Barth, WSBA #22780
    1301 Fifth Avenue, Suite 2900
    Seattle, WA 98101
    (206) 623-7292

    William S. Lerach
    Darren J. Robbins
    **MILBERG WEISS BERSHAD HYNES
    & LERACH, LLP**
    600 West Broadway
    Suite 1800
    San Diego, CA 92101
    (619) 231-1058

CLASS ACTION COMPLAINT FOR        - 26 -
VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

1396.11 0001 BSC.DOC

**HAGENS BERMAN LLP**
*Attorneys at Law*

OFFICES IN SEATTLE PHOENIX LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1

2      Paul J. Geller
       **CAULEY & GELLER, LLP**
3      1 Boca Place, Suite 421A
       2255 Glades Rd.
       Boca Raton, FL  33431
4      (561) 750-3000

5      Richard D. Kranich
       **LAW OFFICES OF RICHARD D.**
6      **KRANICH**
       120 Broadway
7      Suite 1016
       New York, NY 10271-0074
8      (212) 608-8965

9      Attorneys for Plaintiff

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26



HAGENS BERMAN LLP
Attorneys at Law

OFFICES IN SEATTLE  PHOENIX  LOS ANGELES
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

## CERTIFICATION OF JOHN BAIN
## IN SUPPORT OF CLASS ACTION COMPLAINT

John Bain ("plaintiff") declares, as to the claims asserted under the federal securities laws, that:

1.  Plaintiff has reviewed the complaint prepared by counsel in the above-captioned case and has authorized its filing.

2.  Plaintiff did not purchase the security that is the subject of the complaint at the direction of plaintiff's counsel or in order to participate in any private action arising under the federal securities law.

3.  Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.  During the proposed Class Period, plaintiff executed the following transactions relating to Avista Corporation as follows:

    *Purchased 50 shares @ 31.90 on 4/17/00*

5.  During the three years prior to the date of the Certificate, Plaintiff has sought to serve or served as a representative party for a class in the following actions filed under the federal securities laws:

    a)

    b)

6.  Plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 24 day of July, 2000

John Bain